## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| **RAFAEL FOUNTAIN and TYRONE MOORE,** | **JURY TRIAL DEMANDED** |
| | **CASE NO. 3:24-cv-1128** |
| **Plaintiffs,** | |
| **v.** | |
| **SERAMONTE CT LLC and SERAMONTE ESTATES, LLC,** | **June 30, 2024** |
| **Defendants.** | |

## COMPLAINT

Plaintiffs, Rafael Fountain and Tyrone Moore, by and through counsel, hereby bring this action against Seramonte CT LLC and Seramonte Estates, LLC, and state as follows:

### JURISDICTION AND VENUE

1.  This Court has jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and an amount in controversy greater than $75,000.

2.  In accordance with 28 U.S.C. § 1367, the Court may exercise supplemental jurisdiction to hear all state law statutory and common law claims arising under this case or controversy.

3.  Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

### PARTIES

4.  The Plaintiffs Rafael Fountain and Tyrone Moore are natural persons residing in Hamden, Connecticut.

5.  Each Plaintiff is a "person" within the meaning of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a, et seq., because each is a "natural person" under Conn. Gen. Stat. § 42-110a(3).

6.   Seramonte CT LLC is a limited liability company, engaged in the business of owning and managing the Unit. Its principal place of business is located at 50 Chestnut Ridge Road, Suite 205, Montvale, NJ 07645. Upon information and belief, Seramonte CT LLC is a citizen of New York, as all of its members are citizens of New York.

7.   Seramonte Estates, LLC is a limited liability company that was administratively dissolved on August 1, 2023 and reinstated on February 2, 2024. It was engaged in the business of owning and managing the Unit during the period of the misconduct detailed herein. Its current principal place of business is located at 777 Chestnut Ridge Road, Suite 301, Chestnut Ridge, NY 10977. Upon information and belief, Seramonte Estates, LLC is a citizen of New York, as all of its members are citizens of New York.

8.   Upon information and belief, Seramonte CT LLC is the successor in interest to Seramonte Estates, LLC.

## SUMMARY OF CLAIMS

9.   The Plaintiffs assert claims for violation of CUTPA, breach of contract, and violation of fair housing laws against the Defendants based on the Defendants' repeated failures over a period of more than two years to remediate the unsafe conditions issues in the Unit resulting from disasters such as flooding and fire, failure to abide by its lease obligations to repair damages in a reasonable time or reduce the rent, and discriminatory conduct against the Plaintiffs on account of their race and sexual orientation.

## FACTUAL ALLEGATIONS

10. The Plaintiffs are former residents of 120 Kaye Vue Drive, Hamden CT 06514 (the "Unit"). The Plaintiffs, along with their nine-year-old grandchild, moved to the two-bedroom, one-and-a-half bath Unit on July 1, 2021, and were tenants until January 2024.

11. The Defendants' property manager, office secretary, and maintenance teams have at all relevant times acted as the agents of whichever Defendant owned the Unit.

12. The Plaintiffs moved into the Unit in July 2021. Upon their move-in, the Plaintiffs found mold on the walls of the basement, which they requested that the Defendants remediate. The Defendants responded by spray-painting over the mold, covering up but failing to rectify the issue. Unknown to the Plaintiffs at the time, the Defendants had received multiple complaints from the prior tenants and from the Quinnipiack Valley Health District ("QVHD") about significant mold issues in the Unit. Exhibit A.

13. In October 2021, the ceiling in the first-floor bathroom began leaking, which made the floor dangerously slippery, caused mold to grow on the walls, and rendered the bathroom unusable. The Plaintiffs submitted a maintenance ticket requesting remediation. The Defendants ignored their request for over a month before finally reaching out to coordinate repairs in December. Exhibit B.

14. On February 4, 2022, the Plaintiffs' basement flooded during a snowstorm, leading to two to three inches of water pooling on the unlevel basement floor. The Plaintiffs reported the situation to the Defendants and requested immediate maintenance. However, it was not until April 13, 2022—over two months later—that the Defendants responded, promising that they would send a contractor to the Unit the following week to install a sump pump. Exhibit C. Even then, this promise went unfulfilled: neither a contractor, nor a sump pump, ever arrived.

15. The Defendants' failure to remediate the flooding caused a resurgence of mold on the walls of the basement. Because the Plaintiffs' furnace was located in the basement and air vents connected the basement to the rest of the Unit, the odor from the stagnant water and mold spread throughout the rest of the home and pervaded their possessions.

16. In the months following the February 2022 flood, the Plaintiffs experienced recurrent flooding originating from the same area of the basement. Without remediation, the mold and odors escalated further, and severely impaired the Plaintiffs' use and enjoyment of their Unit.

17. Due to the Defendants' failure to act, the Plaintiffs experienced severe stress, suffered from the harmful effects of mold, mildew, and poor indoor air quality, and incurred expenses for associated medical care. In August 2022, Mr. Fountain suffered a heart attack. He was 40 years old, otherwise healthy, and had no known predisposition to cardiac problems. Mr. Fountain and the Plaintiffs' grandson also began experiencing recurring nosebleeds. Because Mr. Fountain was on blood thinners following his heart attack, one of his nosebleeds required a medical visit where the doctor had to cauterize the source of the bleeding.

18. On October 1, 2022, after eight months of repeated flooding, worsening mold, mildew, and air quality conditions, and no assistance from the Defendants, the Plaintiffs submitted a complaint to QVHD. Exhibit D. QVHD responded that it was "aware of issues concerning Seramonte basements and ordered correction." Exhibit E. Still, the Defendants took no action to remedy the issues in the Unit.

19. On May 8, 2023, a fire broke out in the Plaintiffs' next-door neighbor's adjoining apartment, 122 Kaye Vue Drive. By the time that Hamden fire crews arrived on the scene, "heavy smoke" was billowing out from the next-door apartment and fire crews "encountered heavy fire in the kitchen area." Exhibit F. The smoke, toxic fumes, and heat from the fire permeated the Unit. Exhibit G.

20. The Hamden fire crew sprayed the firehose through the Plaintiffs' windows and entered the Unit to spray the Plaintiffs' walls to prevent the fire from spreading. The Unit was left soaked, with water pooling in the basement and on the first two floors.

21. The Defendants were aware of the fire at the time it occurred, and the Defendants' maintenance employee was on the scene.

22. Recognizing the severity of the damage to the Unit, the American Red Cross arranged for the Plaintiffs to obtain temporary housing in a hotel for two nights with the expectation that, in that time, the Defendants would either remediate the fire and water damage and return the Unit to a habitable condition or relocate the Plaintiffs to an available unit or other temporary housing.

23. However, upon returning to their Unit after two nights at the hotel, the Plaintiffs found that the damage to the Unit had not been ameliorated. The odor of smoke still permeated the Unit, and the water was left stagnant. The only changes made were the addition of two small fans placed on the basement stairway. The fans were inadequate to address the water damage or to mitigate the smoke fumes throughout the Unit. The Defendants did not provide any compensation to the Plaintiffs for increased electricity costs caused by the fans.

24. On May 12, 2023, Mr. Fountain visited the Defendants' office to inquire about repairs. He was told that the Defendants' property manager was unavailable, but that the Defendants were planning to take care of the Unit's issues.

25. On May 17, 2023, the Hamden Building Department informed Seramonte CT LLC that it had conducted an inspection of the Unit on May 8, and found that "[t]he house had smoke and had to be vented and there was water in the basement that had to be dried up." Exhibit H. On May 19, the Town of Hamden further notified Seramonte CT LLC that the Unit was "unfit for occupancy and the occupants have been determined to be displaced persons within the meaning of the Uniform Relocation Assistance Act." The Town informed Seramonte CT LLC that Seramonte CT LLC would be responsible for securing alternative housing for the Plaintiffs until the Unit was deemed habitable. Exhibit I.

26. The Defendants did not relocate the Plaintiffs or make the required repairs. As a result of the Defendants' inaction, the conditions in the Unit further deteriorated: the standing water in the basement caused the mold, mildew, and odor to intensify. The smell of smoke was so strong that it aggravated Mr. Moore's preexisting respiratory issues and triggered the Plaintiffs' grandson's nosebleeds.

27. On May 24, 2023, Mr. Moore submitted another complaint to QVHD regarding the mold, mildew, fire damage, and odor conditions of the Unit. Exhibit J.

28. Before the end of the month, the Plaintiffs again visited the Defendants' office about the unsafe conditions of the Unit. The Defendants told the Plaintiffs that they did not need to pay rent given the continuing problems. Following these instructions, the Plaintiffs did not pay rent for June.

29. On June 9, 2023, QVHD conducted its inspection of the Unit. The QVHD inspector informed the Plaintiffs that they would reach out to the Defendants on the Plaintiffs' behalf. The resulting QVHD inspection report stated that "foul odor was detected" and that there was "possible water in basement from fire that could be causing the foul odor." Exhibit K.

30. On June 12, 2023, QVHD emailed the Defendants. Exhibit K. The Defendants did not make the necessary repairs or relocate the Plaintiffs.

31. On June 13, 2023, the Plaintiffs again visited the Defendants' office to obtain updates on when the Defendants would make the necessary repairs or relocate them. They were once again told that the Defendants' property manager was unavailable.

32. In July 2023, the Defendants provided the Plaintiffs with a dehumidifier. Like with the fans from May, the Defendants did not offer compensation for the corresponding utility costs associated with the appliance's use. The Plaintiffs informed the Defendants that the dehumidifier

was both an insufficient and an unrealistic solution. Because of the amount of water in the Unit, the machine's water contents had to be emptied every three hours. The Plaintiffs could not feasibly do so as Mr. Fountain worked full-time and Mr. Moore had a disability and could not empty it alone. The Plaintiffs again visited the leasing office to emphasize their concerns. The Defendants did not offer any additional assistance.

33. Given the Defendants' previous instructions per paragraph 24 and the continuing unsafe conditions of the Unit, the Plaintiffs did not pay rent for July.

34. With nowhere else to go, the Plaintiffs were forced to reside in the Unit throughout this entire process. They expended many hours worrying about the state of the Unit and cleaning it to the best of their ability given the Defendants' failure to act. They tried to reduce health hazards on their own by scrubbing soot off surfaces and washing clothing and linens. They spent over $1,000 purchasing air fresheners, cleaning supplies, and an air purifier for their grandchild's bedroom. The Plaintiffs were also deeply humiliated by the persistent smell of smoke and mildew on their clothing, which followed them through all of their public appearances.

35. In August 2023, despite the Defendants' continued failure to remedy the abysmal conditions, the Plaintiffs paid their full August rent because they feared potential retaliation.

36. On August 17, 2023, the Defendants issued to the Plaintiffs a Notice to Quit for nonpayment of the rent in June and July and for lapse of time, despite the Defendants' reassurances that nonpayment was acceptable, the Defendants' failure to resolve the conditions issues, and the continued uninhabitability of the Unit.

37. On August 24, 2023, the Defendants told the Plaintiffs that they would need to submit a formal work order for the Defendants to conduct maintenance. This request came more than three months after the fire and despite, as discussed above, an order from the Town of Hamden

describing the Unit as "unfit for occupancy," email from QVHD about the "foul odor," mildew and mold in the Unit, and multiple visits from the Plaintiffs themselves pleading for assistance. The Plaintiffs submitted a formal repair order accordingly on August 28, 2023.

38. On August 29, 2023, the Plaintiffs spoke with the Defendants' property manager and coordinated a time for a meeting on September 1, 2023. When the Plaintiffs stopped by the property manager's office at the agreed-upon time, the property manager was not in the office.

39. On September 17, 2023, the Plaintiffs filed a second complaint to QVHD about the extreme mold, mildew, odor, and smoke damage to the Unit.

40. On September 22, 2023, the Defendants contacted the Plaintiffs about repairs. The Plaintiffs were told that maintenance would rectify the water leak and replace the drywall in the basement. The Plaintiffs gave the Defendants permission to access the Unit because they would not be home at the requested time.

41. Upon returning to the Unit after the coordinated repair time, the Plaintiffs found that the Defendants had not completed the repairs they said they would. Instead, the Defendants tore down the basement wall separating the Unit from the neighboring apartment where the fire took place. The Defendants had also installed two fans actively blowing the fumes from the neighboring unit into the Plaintiffs' Unit.

42. The Defendants' actions—rather than mitigating harm—dramatically exacerbated the danger to the Plaintiffs. The Defendants had failed to drain the standing water from the fire suppression efforts from the neighboring unit after the fire. They had also left the neighboring unit's windows open, and door unlocked and at-times ajar. As a result, severe mold, mildew, toxic fumes, and pests were allowed to fester in the neighboring apartment for months. Tearing down the adjoining wall and using fans to blow fumes into the Plaintiffs' Unit thus increased the

Plaintiffs' contact with hazardous conditions, exposed the Plaintiffs' Unit to outdoor elements, and introduced the Plaintiffs to security risks from potential intruders who could more easily access their living space.

43. The Plaintiffs immediately reached out to the Fire Department, Building Department, and QVHD.

44. On September 29, 2023, QVHD re-inspected the Unit. Upon seeing the conditions of the Unit, the inspector immediately contacted the Defendants to recommend repairs. The QVHD report noted "odor is bad and sewer pipe is leaking" and "basement - open wall, some odor, fans in neighboring unit blow into #120." Exhibit L.

45. On or around September 30, 2023, the Hamden Building Department inspected the Unit. The resulting inspection report again noted that the "water damage penetrated the basement wall creating mold and mildew damage that is causing an unsafe condition for [the Plaintiffs]. . . . [W]e observed conditions that justified the complaint that was submitted." Exhibit M. The Building Department notified Seramonte CT LLC of the results of the inspection on October 5, 2023, stating that the conditions of the apartment "has caused dangerous conditions." Exhibit N.

46. On or about September 30, 2023, the Plaintiffs relocated into a hotel given the dangerous conditions of the Unit and at the suggestion of the Building Department and QVHD.

47. On October 13, 2023, the Town of Hamden notified Seramonte CT LLC again that the Unit was "unfit for occupancy" due to "Dangerous Conditions." The Town stated that it would be providing relocation benefits to the Plaintiffs given the Unit's inhabitability. It informed Seramonte CT LLC that Seramonte CT LLC was legally responsible for the costs of any and all relocation assistance provided by the Town and advised Seramonte CT LLC to "promptly make

arrangements to provide alternative housing for your tenant(s) . . . [and to] notify this office as soon as possible of your intentions." Exhibit O.

48. The Defendants did not pay to relocate the Plaintiffs or make any repairs to the Unit.

49. On December 15, 2023, the Building Department issued a "Notice of Unsafe Structure" to Sermonate CT LLC regarding the Plaintiffs' Unit. It noted active water leakage inside the wall, leakage from the bathroom, and water running in the basement from the plumbing system. The notice stated that the wall needed to be opened completely and the plumbing repaired. Exhibit P.

50. The Plaintiffs lived in a one-room studio hotel room with their grandchild and dog until January 8, 2024. The studio had one closet, one bathroom, one bed, and a sofa bed where the Plaintiffs' grandson slept. The Plaintiffs had no privacy. The pots and pans provided by the hotel were not sufficient, the dishwasher was unusable, and the room reeked of cigarette smoke.

51. Being forced to reside in the hotel significantly uprooted the Plaintiffs' lives and disrupted their routines. The hotel was in the Long Wharf neighborhood of New Haven, making it difficult for the Plaintiffs to send their grandson to school in Hamden. Their grandson also struggled to focus on his homework due to the loud noises emanating from neighboring hotel rooms and told the Plaintiffs how much he missed having his own room at 120 Kaye Vue. Their grandson also started receiving breathing treatments and continued experiencing nosebleeds during their stay at the hotel. The Plaintiffs and their grandson celebrated Halloween, Thanksgiving, and Christmas in the hotel room. Exhibit Q.

52. The Plaintiffs took all appropriate courses of action to facilitate a habitable place to live with their grandchild. Besides myriad complaints filed with the Town of Hamden Building

Department, the QVHD, and the Fire Department, the Plaintiffs also repeatedly tried to communicate with the Defendants to no avail.

53. All the while, the Plaintiffs and the Defendants were parties to a lease agreement. From July 1, 2021, to June 30, 2022, the parties had a written lease. In May 2022, the Defendants emailed the Plaintiffs offering a lease renewal, to which the Plaintiffs emailed their acceptance. The Defendants never sent the renewed lease document. However, with the Defendants' consent, the Plaintiffs continued to occupy the Unit pursuant to the holdover provision in Section 24 of their original lease agreement. This provision states:

> "By signing below Resident(s) agrees that <u>if Resident(s) continues to occupy the Unit with Landlords consent following the end of this written lease term the other terms and conditions of this lease will continue</u> on a month-to-month basis and <u>all of its rules, regulations and terms shall continue except as to the new month-to-month duration</u> and the additional month-to-month fee in the amount of $200.00. A new <u>lease</u> for the following month under these terms will be created if Resident(s) fails to provide written notice to Landlord of cancellation within 60 days of the Resident(s) final month of occupancy" (emphasis added).

54. The lease defined Mr. Fountain, Mr. Moore, and their grandchild as "Residents" and Seramonte Estates, LLC as the "Landlord." Upon information and belief, Seramonte CT LLC is the successor in interest to Seramonte Estates, LLC.

55. Section 9 of the lease further provided as follows:

> "<u>Resident(s) will not have to pay rent for any time that Resident(s) use and enjoyment of the Unit is materially affected because the Unit or the building is damaged by fire or other casualty</u>. If Resident(s) continues to occupy any portion of the Unit, Resident(s) rent shall be reduced by the decrease in the fair rental value of the Unit, which will be determined solely by Landlord. If said damage, was caused by Resident(s), or others mentioned above, Resident(s) will be responsible for payment of any and all losses, expenses and costs incurred by Landlord due to damage, as well as all rent due pursuant to this lease . . . <u>If any part of the Unit or the building is damaged by fire or other casualty, or for inability to provide heat, Landlord shall have the right to cancel this lease . . . If Landlord does not cancel this lease, Landlord will repair the damage within a reasonable time</u>" (emphasis added).

56. The Plaintiffs are a Black, same-sex couple. Seramonte CT LLC was aware of the Plaintiffs' race and sexual orientation.

57. Despite a high number of vacant units available and the serious damage to the Unit, Seramonte CT LLC did not relocate the Plaintiffs.

58. The Plaintiffs frequently saw Seramonte CT LLC's maintenance teams responding to other units and tending to other projects—including repainting the parking lot—even while Seramonte CT LLC continued to blatantly ignore the Plaintiffs' inquiries and requests for repairs.

59. At the same time, Seramonte CT LLC treated the Plaintiffs' neighbors residing in the unit where the fire originated (122 Kaye Vue), an opposite-sex couple, more favorably. The neighbors were relocated into a hotel during May and June while the Plaintiffs remained in their Unit. Even further, Seramonte CT LLC then provided the neighboring tenants with another unit in the complex starting in July.

60. There have been at least seven other fires in the properties owned by Seramonte CT LLC within a mile of the Unit ("Seramonte Estates") between January 2021 and March 2024. Upon information and belief, all Seramonte Estates tenants who experienced similarly severe damage to their unit due to fires were typically offered new units by Seramonte CT LLC. Upon information and belief, the Plaintiffs were the only tenants for whom Seramonte CT LLC actively escalated the harm through actions such as tearing down walls and furthering exposure to hazardous conditions.

61. Upon information and belief, the Plaintiffs were the only Black and same-sex couple among the Seramonte Estates tenants affected by fires between January 2021 and March 2024.

## CAUSES OF ACTION

### COUNT I: UNFAIR ACTS OR PRACTICES UNDER CUTPA
(as to Seramonte Estates, LLC and Seramonte CT LLC)

1-61.  The Plaintiffs restate and incorporate all of their statements and allegations contained in paragraphs 1 through 61 in their entirety, as if fully rewritten herein.

62. The Defendants repeatedly failed to perform their legal duty to maintain the Unit. Conn. Gen. Stat. § 47a-7 provides that the landlord shall "make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition . . . and maintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating and other facilities." The Defendants plainly did not live up to this duty.

63. By providing the Plaintiffs a mold-impaired apartment upon move-in and failing to eliminate the mold issues upon the Plaintiffs' request, the Defendants failed to uphold their duty to provide a unit that is "clean, sanitary and fit for human occupancy." Hamden Housing Code, tit. XV, c. 152, § 152.62.

64. The Defendants' undue delay in responding to the October 2021 bathroom ceiling leak constitutes a violation of their responsibility to ensure that "[e]very foundation, floor, wall, ceiling and roof shall be reasonably weathertight [and] watertight." Hamden Housing Code, tit. XV, c. 152, § 152.26.

65. The Defendants' undue delay in responding to the February 2022 flood and failure to address the damages from the flood and subsequent recurrences constitute violations of their responsibility to ensure that "[e]very foundation, floor, wall, ceiling and roof shall be reasonably weathertight [and] watertight." Hamden Housing Code, tit. XV, c. 152, § 152.56.

66. Moreover, the Defendants failed to address the mold, water damage, and smoke damage in the Unit after the May 2023 fire, despite repeated requests over a period of more than eight

months. These issues posed severe health and safety hazards to the Plaintiffs and their grandchild. The Defendants were well aware of the need for repairs and the insufficiency of the remedies offered from their contacts with the Plaintiffs and various government agencies. The Defendants' delays in responding to the Plaintiffs, their insistence on inadequate responses such as a dehumidifier despite their awareness of the physical constraints that the Plaintiffs faced, and ultimate failure to resolve the core underlying issues constitute violations of their duties as landlords.

67.  CUTPA prohibits "unfair acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a). The leasing of real property is "trade" or "commerce" under CUPTA. Conn. Gen. Stat. § 42-110a(4).

68. The Defendants' failure to fulfill their legal obligations under Conn. Gen. Stat. § 47a-7 as detailed above offends public policy as established by statute. Moreover, it is immoral, unethical, oppressive, and unscrupulous for the Defendants to refuse to comply with their obligations under Conn. Gen. Stat. § 47a-7 and to fail to adequately remediate the Unit. The Defendants abused their position of power over the Plaintiffs and where they lived by refusing to comply with repeated municipal orders to remedy the Unit.

69. CUTPA allows "any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use . . . of a method, act or practice prohibited by section 42-110b" to bring suit and recover actual damages. Conn. Gen. Stat. § 42-110g(a). Courts may also "award punitive damages and provide equitable relief as it deems necessary or proper."

70. The Plaintiffs have suffered ascertainable monetary losses and damages to property due to the Defendants' failure to perform their legal duty as the landlord.

71. As a direct consequence of the Defendants' failure to remedy the July 2021 mold issues, the Plaintiffs suffered an ascertainable loss from diminished enjoyment from and fair market value of the Unit.

72. As a direct consequence of the Defendants' failure to remedy the October 2021 ceiling leak in a timely manner, the Plaintiffs suffered an ascertainable loss from diminished enjoyment from and fair market value of the Unit.

73. As a direct consequence of the Defendants' failure to remedy in a timely manner the February 2022 basement flooding and mold issues, the Plaintiffs sustained $6,000 worth of damage to their clothing and the flooring they had laid in front of the basement washer and dryer, as well as their diminished enjoyment from and fair market value of the Unit.

74. As a direct consequence of the Defendants' inadequate response to the May 2023 fire, the Plaintiffs' out-of-pocket expenses include, at minimum, the following: costs incurred while attempting to reduce the surmounting health hazards in the Unit on their own, such as air fresheners, cleaning supplies, and an air purifier for their grandchild's bedroom; breathing treatments for their grandson; and additional transportation costs as a result of their relocation to New Haven. The Plaintiffs' losses also include rent paid for a Unit which did not meet habitability standards under state and local health and building codes. Damages to the Plaintiffs' property due to the persistent uninhabitability of the Unit include, but are not limited to, smoke-, mold-, and mildew-damaged clothing, smoke-, mold-, and mildew-damaged furniture, and smoke-, mold-, and mildew-damaged personal effects and professional materials.

75. The Plaintiffs have also suffered actual damages under CUTPA due to emotional distress. The Plaintiffs lived in constant anxiety about their safety and health and the long-term impact of living in a Unit ultimately declared uninhabitable. They also experienced extreme stress from the

Defendants' refusal to assist them and their inability to rectify the issues. The Plaintiffs suffered

further stress during the pendency of the summary process action as they were not only at risk of

losing their home, but also suffered permanent damage to their housing and credit records. And

the Plaintiffs suffered emotional distress witnessing their grandson suffer ongoing nosebleeds,

difficulty completing schoolwork, and homesickness.

76. The Plaintiffs also suffered actual damages under CUTPA due to physical injury,

including but not limited to Mr. Fountain's heart attack, Mr. Fountain's persistent nose bleeds,

and Mr. Moore's respiratory issues.

77. Accordingly, the Plaintiffs are entitled to actual damages under Conn. Gen. Stat. § 42-

110g(a).

## COUNT II: INTENTIONAL VIOLATIONS OF CUTPA
### (as to Seramonte Estates, LLC and Seramonte CT LLC)

1-77. The Plaintiffs restate and incorporate all of their statements and allegations contained in

paragraphs 1 through 77 in their entirety, as if fully rewritten herein.

78. The Defendants' failure to repair mold, ceiling leak, and basement flooding issues in the

Unit persisted for several years, and their failure to remediate the damage caused by the May

2023 fire persisted for eight months. The unfair conduct was without reasonable justification or

excuse and continued even after the Defendants were ordered by multiple municipal agencies to

remedy the issues. In fact, the Defendants even filed a retaliatory eviction against the Plaintiffs

for not paying rent in June and July 2023 despite telling the Plaintiffs that they did not need to

pay rent until the Defendants made the Unit habitable again.

79. In tearing down the basement wall separating the Unit from the neighboring apartment

where the fire took place and installing two fans blowing toxic fumes from the neighboring

apartment into the Unit, the Defendants knowingly took affirmative measures to exacerbate the Plaintiffs' exposure to hazardous conditions.

80. In refusing to remedy the situation, the Defendants demonstrated a willful indifference to the Plaintiffs' rights and to the harm done to them and their grandson's economic, physical, and emotional well-being due to the Defendants' failure to fulfill their duties.

81. Accordingly, the Plaintiffs are entitled to actual and punitive damages under Conn. Gen. Stat. § 42-110g(a).

### COUNT III: BREACH OF CONTRACT
### (as to Seramonte Estates, LLC and Seramonte CT LLC)

1-81. The Plaintiffs restate and incorporate all of their statements and allegations contained in paragraphs 1 through 81 in their entirety, as if fully rewritten herein.

82. The Plaintiffs' use and enjoyment of their Unit was severely impaired from the May 2023 fire and onward. The Plaintiffs were not responsible for the fire or the unsafe conditions that ensued.

83. At no point did the Defendants exercise their right to cancel the lease. Thus, the Defendants breached their contract with the Plaintiffs when the Defendants failed to repair the Unit in a reasonable time.

84. The Defendants also breached their obligation to provide a rent reduction to account for the decrease in the fair value of rent for the Plaintiff's Unit due to the damage to the Unit from the fire.

### COUNT IV: DISCRIMINATION
### (as to Seramonte CT LLC)

1-84. The Plaintiffs restate and incorporate all of their statements and allegations contained in paragraphs 1 through 84 in their entirety, as if fully rewritten herein.

85. Conn. Gen. Stat. § 46a-64c provides that "[i]t shall be a discriminatory practice . . . [t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, . . . color, . . . sex, gender identity or expression[.]"

86. The Plaintiffs, as paying tenants with a legally binding lease, were qualified to receive the services they requested—namely, meaningful repairs to their Unit or relocation to a new unit following the fire in May 2023.

87. When Seramonte CT LLC eventually acknowledged that the Unit needed remediation after unacceptable delay, it denied the Plaintiffs meaningful repairs, first providing minor, inadequate remedies, and then taking actions that actively exacerbated the dangerous conditions of the Unit.

88. Seramonte CT LLC treated the Plaintiffs, a Black, same-sex couple, less favorably compared to other Seramonte Estates tenants affected by fire who were not Black and in same-sex relationships.

89. Accordingly, the Plaintiffs are entitled to actual and punitive damages under Conn. Gen. Stat. § 46a-89.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Rafael Fountain and Tyrone Moore respectfully request that this Court enter an order granting judgment against the Defendants for the following:

a.   Awarding actual damages against Defendants under Counts I and II pursuant to Conn. Gen. Stat. § 42-110g(a) and under Count III pursuant to the common law, and against Seramonte CT LLC under Count IV pursuant to Conn. Gen. Stat. § 46a-89;

b.  Awarding punitive damages against Defendants under Count II pursuant to Conn. Gen.

Stat. § 42-110g(a), and against Seramonte CT LLC under Count IV pursuant to Conn.

Gen. Stat. § 46a-89;

c.  Awarding costs and reasonable attorney's fees, costs, and expenses under Counts I and II

pursuant to Conn. Gen. Stat. § 42-110g(d), under Count III pursuant to Conn. Gen. Stat. §

42-150bb, and under Count IV pursuant to Conn. Gen. Stat. § 46a-86(c).



Respectfully Submitted,

THE PLAINTIFFS
RAFAEL FOUNTAIN
TYRONE MOORE

Law School Interns:                          By ____/Jeffrey Gentes/_____
                                             Jeffrey Gentes (ct28561)
Liz Brown                                    Anika Singh Lemar (ct31345)
Yale Law School '26                          Jerome N. Frank Legal Services Organization
                                             Yale Law School
Sam Cai                                      P.O. Box 209090
Yale Law School '26                          New Haven, CT 06520
                                             Tel: (203) 432-4800
Anne McDonough                               Fax: (203) 432-1426
Yale Law School '26                          jeffrey.gentes@ylsclinics.org
                                             anika.lemar@ylsclinics.org
Trenaj Mongo                                 lso.juris@ylsclinics.org
Yale Law School '26

Daisy Ni
Yale Law School '26